UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

LAWRENCE BRENTON,                                          00-CV-0742E(Sr)

        Plaintiff,

   -vs-

CONSOLIDATED RAIL CORPORATION,                       MEMORANDUM
CANADIAN AMERICAN TRANSPORTATION,
  INC.,                                                    and
PIERRE DESMEULES,
231543 ONTARIO, INC., c.o.b. as Morley Holdings      ORDER[1]
  Limited o.a. D&T Escort Service,
D&T ESCORT SERVICE,
DONALD KUMMER a.k.a. Ronald Kummer and
NOVA PERMIT AND PILOT CARS,

       Defendants.

---

## INTRODUCTION

Plaintiff, a train locomotive engineer, was injured on May 29, 1998 when the train he was operating hit a truck and "low boy" trailer that was carrying an oversize load and was stuck on the railroad tracks at the Colby Road railroad crossing in the town of Pembroke, N.Y.  He commenced this negligence action on April 25, 2000 against Consolidated Rail Corp. ("Conrail") — the railroad —, Canadian American Transportation, Inc. ("CAT") — the owner of the truck and trailer —, Pierre DesMeules ("DesMeules") — an employee of CAT and the driver of the truck hauling the oversize load —, Nova Permit &Pilot Cars ("Nova") — the company hired to

---

[1]This decision may be cited in whole or in any part.

provide permit acquisition and escort services allowing the load to travel on the various roads along its route and to its destination in the United States — and D&T Escort Service ("D&T") — the service hired to escort the load on its route and to its destination.  Defendants filed various cross-claims against one another.

Plaintiff settled his claims against defendants and on October 13, 2005 a Stipulation of Dismissal pursuant to FRCvP 41(a) was filed only as to plaintiff's claims against defendants. (Dkt. #200). Defendants' cross-claims against each other remain.

Pending before the Court are the following motions:

1)  Defendant Conrail's motion pursuant to FRCvP 26(a)(2), 34(a)(2) and 37 to strike the expert affidavit filed by CAT and DesMeules in their papers in opposition to the then pending summary judgment motions[2] and also to strike any reference to said expert in the arguments relative to such motions (Dkt. #171);

2) Defendant D&T's motion pursuant to FRCvP 26(a)(1), 26(a)(2), 26(a)(5) and 37, also to strike the expert affidavit and any reference to it filed by CAT and DesMeules and/or to allow D&T the opportunity for further expert disclosure both as to the CAT/DesMeules expert and the retention of its own expert (Dkt. #175);

---

[2] The summary judgment motions referred to in this motion were filed on February 22, 2005 by Conrail and D&T (Dkt. #124 & #126) and were denied without prejudice by Order of this Court on September 8, 2005 (Dkt. #190) in order to facilitate a possible settlement with plaintiff. The Court shall construe the motions to strike as applicable to the current summary judgment motions.

3)  Defendant Conrail's motion seeking summary judgment on all cross-claims filed against it and in favor of its cross-claims against defendants CAT, DesMeules, D&T, and Nova (Dkt. #197);

4)  Defendant D&T's motion for summary judgment seeking dismissal of all cross-claims filed against it (Dkt. #193)[3];

5) Defendant Nova's summary judgment motion seeking dismissal of all cross-claims filed against it, excluding CAT's cross-claim (Dkt#149).

Extensive papers have been filed, oral argument has been held on numerous previous dates and all of the above motions have been deemed submitted.

## **DISCUSSION**

The motions to strike the expert affidavit

The Case Management Scheduling Order was filed on April 6, 2004 and is the only scheduling order in this case. (Dkt. 117).  It stated in plain and simple language, that "*all discovery* herein shall be accomplished not later than **January 21, 2005**," (italics added, boldface in original) and that motions for summary judgment were to be filed by February 22, 2005. (*Ibid.*).

---

[3] As stated in the previous note, D&T's original motion was denied without prejudice pending possible settlement of plaintiff's claims.  It was further ordered that defendants may file additional summary judgment motions by October 3, 2005 (see, Dkt. #190).  On September 30, 2005 D&T filed what it called an "affidavit" in support of its "motion" for summary judgment (Dkt. #193) as well as a memorandum in support of such "motion" (Dkt. #194).  All parties have responded as if D&T actually re-filed its summary judgment motion and the matter has been submitted to this Court for decision.  Therefore, in the interests of justice, the Court will deem the September 30, 2005 "affidavit" as the actual motion for summary judgment.

Almost three months after the expiration of discovery (April 15, 2005), defendants CAT and DesMeules first identified Mr. Hrycay as an expert when they filed their opposition papers to Conrail's and D&T's first motions for summary judgment. (Dkt. #140).  Prior to this date there had been significant discovery and CAT and DesMeules had provided no expert disclosure to plaintiff or any of the other defendants.  Further, in the nearly two months between the date of the filing of the summary judgment motions and the date they filed the Hrycay affidavit in their response to these motions, there is no indication that CAT and DesMeules ever disclosed to the others that Hrycay had been retained.  Incidentally, Hrycay's affidavit seems to suggest that he had been retained at least one month prior to the filing of said affidavit. (Dkt. #140, ¶10).  This case has neither a scheduled trial date, nor has been ordered to be ready for trial.

Conrail urges that the Court strike Hrycay's affidavit and any reference to it in the consideration of the summary judgment motions or at trial.  D&T argues that "[t]he Court's use of the phrase 'all discovery' was to be inclusive of expert discovery." (Dkt. #175, p. 2).  While D&T joins in the motion to strike, in the alternative it has also made a motion for further discovery of Hrycay and the opportunity to retain its own expert.  CAT and DesMeules have no objection to this further expert disclosure and/or discovery.

Primarily, CAT and DesMeules argue that the disclosure of Hrycay was timely under FRCvP 26(a)(2)(c).  At oral argument on the motion, counsel for CAT and

DesMeules stated that he was under the impression that the Case Management Scheduling Order was issued in order to address some discovery problems CAT was having with Conrail and was not intended to specifically address expert disclosure. (07/15/05 Minute Entry).  He provided no specific basis for this impression and the Court knows of no reason why he would make such an assumption.

D&T is correct in that the use of the phrase "all discovery" in this Court's Case Management Scheduling Order means *all discovery*, including expert discovery. This Court need not, and rarely does, address specific forms of discovery in its scheduling orders. *Compare, Semi-Tech Litigation LLC* v. *Bankers Trust Co.*, ___ F.Supp.2d ___, 219 F.R.D. 324 (S.D.N.Y. 2004); *Auscape International* v. *National Geographic Society*, ___ F.Supp.2d ___, 2003 WL 2004463 , *on reconsideration*, ___ F.Supp.2d ___, 2003 WL 21146628 (S.D.N.Y. 2003)(also uses the general phrase "all discovery" in its scheduling orders and holds that such clearly includes expert discovery).  The provision in FRCvP 26(a)(2)(c), allowing expert disclosure within 90 days before trial "[i]n the absence of other directions from the court, or stipulation by the parties . . .", is not applicable because the Case Management Scheduling Order *was* the 'direction from the Court' as contemplated by that section. *Auscape*, *supra*. Therefore, CAT's and DesMeules' expert disclosure was not timely.

CAT and DesMeules alternatively argue that, if the disclosure is held to be untimely, preclusion is not an appropriate remedy because the violation was neither willful nor prejudicial.   FRCvP 37(c)(1) provides that "[a] party that without

substantial justification fails to disclose information required by Rule 26(a) \*\*\* is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on any motion any witness or information not so disclosed."  "[This] provision is self-executing, and places the burden on the non-disclosing party to demonstrate substantial justification and the harmlessness of the failure to disclose.  Nevertheless, the imposition of sanctions under this rule is discretionary, and preclusion is ordered only rarely." *Potter* v. *Phillips*, ___ F.Supp.2d ___, 2004 WL 3250122 (E.D.N.Y.,2004), *citing  Semi-Tech, supra*; *see also, Ward* v. *National Geographic Soc'y*,___ F.Supp.2d ___, 2002 WL 27777 (S.D.N.Y. 2002)(the provisions of Rule 37(c)(1) are self-executing).

CAT's and DesMeules' proposed justification for the failure to disclose their expert is two-fold.  First, counsel claims that he believed that since no trial date had been set in this matter and the scheduling order did not speak specifically to the issue of expert disclosure, that disclosure of experts would 'default' to FRCvP 26(a)(2)(c) allowing expert disclosure 90 days before trial. (Dkt. #180, ¶ 7).[4]  Second, counsel presents a sort of 'catch 22'argument in that CAT did not have the necessary discovery it needed to retain an expert until after the discovery period had expired. (See, Dkt. #181, pp 5, 6).  In this regard, counsel claims that he did not recognize the need for hiring Hrycay until Nova had provided its expert disclosure (on the day

---

[4] This would explain why no disclosure was given as soon as Hrycay was hired or in the two months after the filing of the summary judgment motions and the filing of CAT and DesMeules' response thereto.

discovery closed) which contained substantial allegations of negligence on the part of CAT and DesMeules.  Approximately three weeks thereafter, they received the necessary materials for expert retention and review.

The Court accepts counsel's representation that the failure to disclose was not willful.  However, counsel's misinterpretation of this Court's scheduling order is, at best, inattentive and warrants admonition.  Counsel for CAT and DesMeules is a seasoned veteran attorney and should have taken more care in making sure that he understood the parameters of the order.  This Court has been issuing scheduling orders in this manner for many years and any attorney who practices before it should clearly be aware of this.  Even if counsel only occasionally appears before this Court, there are many attorneys in his reputable firm who appear here more frequently and could easily have advised him of this Court's practices and procedures.

Further, the 'catch 22' argument is not persuasive.  Nova's allegations of negligence on the part of CAT and DesMeules are hardly surprising or unexpected. Counsel's apparent failure to anticipate this basic theory or strategy is, again, inattentive at best.  Having said that, the Court is not inclined to project counsel's negligence onto his clients by way of such a severe sanction as preclusion.  *But cf., Cine Forty-Second St. Theatre Corp.* v. *Allied Cine Forty-Second St. Theatre Corp.* v. *Allied Artists Pictures Corp.,* 602 F.2d 1062 (2d Cir. 1979)(a grossly negligent failure to obey an order compelling discovery may justify preclusion even in if it would result in dismissal of the claim).

Although the Court finds that the failure to disclose was not substantially justified, there are other factors to consider such as the importance of the evidence sought to be precluded, the prejudice to the opposing party from having to address the new evidence and the possibility of a continuance.  *See, Jiminez* v. *Sullivan,* ___ F.Supp.2d ___, 2004 WL 3019490 (S.D.N.Y. 2004) (*citing Outley* v. *City of New York*, 837 F.2d 587 (2d Cir. 1988*),* and *Softel, Inc.* v. *Dragon Medical and Scientific Communications, Inc.*, 118 F.3d 955 (2d Cir. 1997)).

The stated importance of the Hrycay expert testimony is to refute Nova's claims of negligence on the part of CAT and DesMeules as the cause of the accident. More specifically, Hrycay provides evidence of the possible negligence of other defendants as contributory factors in the causation of this accident.  This goes to the crux of liability in this case for several of the parties.

With respect to prejudice, the Court finds that the "actual difficulties which the violation caused" can be minimized by allowing limited discovery for the purpose of this expert and Nova's expert[5].  *See, Outley, supra* at 591 ("Before the extreme sanction of preclusion may be used by the district court, a judge should inquire more fully into the actual difficulties which the violation causes, and must consider less

---

[5] The Court includes Nova's expert in this order because its eleventh hour disclosure effectively prevented any discovery of its expert, a tactic which also lends itself to preclusion and Rule 37 sanctions. *See, Semi-Tech, supra*; *Auscape, supra; Potter, supra*.

drastic responses."). The possibility of continuance does not pose a problem because no trial date has been set in this case.

For the above stated reasons, Conrail's motion (Dkt. #171) is hereby DENIED. D&T's motion (Dkt.# 175) is CONDITIONALLY GRANTED as follows:  CAT and DesMeules *and Nova* (see, fn. 5) shall make their experts available for deposition by the other parties and all such depositions shall be completed by August 15, 2006; CAT and DesMeules *and Nova* shall produce all requested documents relevant to their experts at least one week in advance of the deposition of each; D&T shall be permitted to hire an expert and shall disclose all expert information to the other parties not later than 60 days after the filing of this order; any deposition of D&T's expert shall occur within 90 days of the filing of this Memorandum and Order and all requested documents relative to this expert shall be produced at least one week prior to such deposition.  Failure to comply with any aspect of this Order by any party may result in the preclusion of all evidence sought to be presented by that party's expert. No extensions of these dates will be granted absent extreme circumstances.  For reasons to follow and to the extent that it is pertinent, the Hrycay affidavit will be considered in determining the summary judgment motions.

The Summary Judgment Motions[6]

The Court cites current authority for the such familiar standard:

> "\*\*\*[S]ummary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law." D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir.1998).  A material fact is one that would "affect the outcome of the suit under the governing law," and a dispute about a genuine issue of material fact occurs if the evidence is such that "a reasonable [factfinder] could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 57 (2d Cir.1997).  In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the moving party.  United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) (per curiam); Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 57 (2d Cir.1987).

Beth Israel Med. Ctr. v. Horizon Blue Cross and Blue Shield of New Jersey, Inc., 448 F.3d 573, 579 (2d Cir. 2006).

---

[6] Nova's summary judgment motion was untimely.  D&T, CAT and Conrail objected to this untimely filing, claiming prejudice in that they were not allowed sufficient time within which to respond and requesting that it not be considered by the Court.  Inasmuch as there have been subsequent summary judgment motions made and extensive, adequate additional time within which all parties have been able to present argument to the Court on all outstanding issues, there is no prejudice and Nova's motion will be considered.

For purposes of these motions, the Court finds that the following facts are not in dispute.  CAT was hired to haul an oversized piece of machinery known as a portable rock crushing plant from Quebec, Canada to Falconer, New York.  CAT assigned its employee, DesMeules, to drive the truck carrying the machinery which was hauled on a "low boy" trailer having a ground clearance of only six inches[7].  CAT was the owner of both the truck and trailer.

Due to the dimensions of the load, CAT was obligated to obtain special transport permits and to have escorts accompany the load to its destination[8].  CAT contracted with Nova to perform this function[9].  Nova hired D&T to provide the escorts.  In order to obtain a permit from the State of New York, Nova was required to map a route and conduct a physical survey of that route.  Although it is unclear whether or by whom such survey was done[10], a representative of Nova signed the New York State Special Hauling Route Survey document certifying that the survey had been done on May 27, 1998, two days prior to the accident.[11]  The proposed route

---

[7] Hereinafter, the machinery and low boy trailer will be referred to collectively as "the load".

[8] *See generally*, N.Y. Veh. & Traf. Law §385

[9] Some specifics of this fact may be disputed between CAT and Nova and will be addressed, *infra.*

[10] It was Nova's practice to rely on third parties in the area of the proposed route to provide them with a safe route and a representation that such route had been surveyed.  It was also the practice that this be done orally, usually over the telephone.

[11] See, Dkt. #199-16 (Nova Permit Service application, NYS Special Hauling Permit and Route Survey forms.

included the Colby Road railroad crossing where the accident occurred.  Colby Road

is also known as Genesee County Road 51.  The Route Survey document signed by

Nova states:

> "***HIGHWAYS OTHER THAN THOSE UNDER THE JURISDICTION OF THE STATE OF NEW YORK DEPARTMENT OF TRANSPORTATION WILL BE SHOWN FOR ROUTING CONTINUITY, BUT APPEARANCE OF ROUTES OTHER THAN THOSE UNDER THE JURISDICTION OF THE STATE OF NEW YORK DEPARTMENT OF TRANSPORTATION DOES NOT CONSTITUTE PERMISSION OR AUTHORIZATION FOR THEIR USE." [12] [capitalization in original]

New York State issued the permit.  It states:

> "AFTER VALIDATION THIS PERMIT AUTHORIZES MOVEMENT ONLY ON HIGHWAYS UNDER THE JURISDICTION OF THE NEW YORK STATE DEPARTMENT OF TRANSPORTATION *** BY ACCEPTING THIS PERMIT, PERMITEE AGREES TO CONTACT AND SECURE PERMISSION TO OPERATE PERMIT VEHICLE FROM ANY AUTHORITIES HAVING PERMIT ISSUE JURISDICTION OF ANY ROUTES OTHER THAN THOSE ROUTES UNDER THE JURISDICTION OF THE STATE OF NEW YORK DEPARTMENT OF TRANSPORTATION ***." [13] [capitalization in original]

---

[12] *Ibid.*

[13] *Ibid.*

In addition to the New York State permit, a Genesee County hauling permit was required.[14]  The Genesee County Superintendent of Highways, the individual charged with the issuing of such permits, stated that any inquiry or application for a special hauling permit for a load of this nature on County Road 51 would most definitely have resulted in a permit denial for that road, primarily due to the low ground clearance of the trailer, the grade of the railroad crossing and the hilly terrain of the road in general.[15]  No one contacted the County of Genesee to inquire about or attempt to obtain a permit for this load on County Road 51.[16]  While there may be some dispute between CAT and Nova as to whether Nova was hired to obtain local permits, it is undisputed that the ultimate responsibility for obtaining and complying with all permitting requirements rested with CAT.

It is a well settled rule that federal courts in diversity cases are governed by the pertinent substantive laws of the respective states. *Erie* v. *Tompkins*, 304 U.S. 64 (1938).  Cross-claims for contribution and/or common-law indemnification require a showing that a particular defendant owed a duty of reasonable care either to the plaintiff or to the cross-claiming co-defendants, which was breached. *Yansak* v. *Blackburn Group, Inc.,* 8 Misc.3d 460, 463, 793 N.Y.S.2d 698 (Supreme Court,

---

[14] *See,* N.Y. Veh. & Traf. Law §385 (15)(b), (d) & (e); Dkt. #198-9 (Deposition of Genesee County Highway Superintendent Timothy Hens. Hereinafter, "Hens Deposition"), at pp. 26 - 29, 40 - 41; and Dkt. #129-3 (NYS Certified Escort Manual) at pp. 9 - 10.

[15] Hens Deposition at pp. 23 - 25, 55, 73.

[16] Fn.15, *supra*.

Schenectady County 2004) (*citing, Raquet* v. *Braun,* 90 N.Y.2d 177, 659 N.Y.S.2d 237, 681 N.E.2d 404); *Baratta* v. *Home Depot USA, Inc.,* 303 A.D.2d 434, 756 N.Y.S.2d 605; *Curley* v. *Gateway Communications, Inc.,* 250 A.D.2d 888, 672 N.Y.S.2d 523; *Phillips* v. *Young Men's Christian Assn.,* 215 A.D.2d 825, 625 N.Y.S.2d 752).   Each of the parties herein owes a duty to plaintiff and/or each other.   These respective duties will be addressed, *infra,* as they relate to the parties making the motions.

There must also be a finding of proximate cause.   New York law on proximate cause is well settled.   The negligent act complained of must have caused the occurrence of the accident from which the injuries flow. *Rivera* v. *City of New York,* 11 N.Y.2d 856,857, 227 N.Y.S.2d 676 (1962).   Where the evidence as to the cause of the accident is undisputed, the question as to whether any act or omission of a defendant was a proximate cause thereof is one for the court. *Ibid.*  The cause of the accident in this case is undisputed.   The load got caught up on the railroad tracks and was hit by the train.

Conrail's motion seeking summary judgment in its favor on all cross-claims it filed against the other co-defendants

Conrail has filed cross-claims against the other defendants for indemnity and contribution, as well as for damages to its property as a result of the accident.

With respect to its claim for contribution against CAT and Nova, Conrail argues that the failure of CAT and Nova to contact the County of Genesee regarding the procurement of the necessary hauling permit for this load on County Road 51

was the 'sole proximate cause' of the accident.  This sole proximate cause theory is based on the premise that, had the County been contacted, the permit would have been denied and the load would never have been on Colby Road, let alone become stuck on the tracks, or been hit by the train.

At the outset, the Court cannot find as a matter of law that this is a sole proximate cause case.  Clearly, an accident may have more than one proximate cause [*see, Ayotte* v. *Gervasio,* 186 A.D.2d 963, 964, 589 N.Y.S.2d 372 (3d Dep't 1992), *aff'd.* 81 N.Y.2d 1062, 601 N.Y.S.2d 463 (1993); *Darmento* v. *Pacific Molasses Co.,* 183 A.D.2d 1090, 1091, 583 N.Y.S.2d 688 (3d Dep't 1992), *aff'd.* 81 N.Y.2d 985, 599 N.Y.S.2d 528 (1993)], the existence of which will not exonerate another defendant from liability if such defendant's negligence can also be shown to be a substantial cause of the accident which produced the injury. *See, Humphrey* v. *State of New York,* 60 N.Y.2d 742, 469 N.Y.S.2d 661(1983); *Derdiarian* v. *Felix Constr. Corp.,* 51 N.Y.2d 308, 315, 434 N.Y.S.2d 166 (1983); *D'Onofrio-Ruden* v. *Town of Hempstead,* 815 N.Y.S.2d 141 (2d Dep't 2006); *Heal* v. *Liszewski,* 294 A.D.2d 911, 741 N.Y.S.2d 374 (4th Dep't 2002).  Further, a finding of sole proximate cause and an award of summary judgment is appropriate only when "the facts clearly point to the negligence of one party without any fault or culpable conduct by the other party." *Bush* v. *Blankenheim,* 254 A.D.2d 736, 678 N.Y.S.2d 427, 428 (4th Dep't 1998), *quoting Morowitz* v. *Naughton,* 150 A.D.2d 536, 537, 541 N.Y.S.2d 122 (2d Dep't 1989).  The Court finds that there are credible questions of fact with respect to the relative negligence of

some of the other defendants that may have proximately caused the accident which prevent the Court from holding that the failure to inquire into the local permit was the sole proximate cause of the accident herein.  The Court will, however, address whether the failure to inquire about the local permit was *a* proximate cause warranting summary judgment against CAT and/or Nova.

It is not disputed that CAT owed a duty to the plaintiff and to Conrail to drive its trucks and move this load in a legal and safe manner on the County's roadways and over Conrail's property (the tracks) so as to minimize the danger of injury and property damage to them.   Nova claims that it was not hired to obtain the local/county permit and, nevertheless, owed a duty only to CAT and cannot be held liable to Conrail for property damages or contribution.

CAT was required to obtain a local/county hauling permit for the road containing the tracks and they failed to do so.  The violation of a rule, regulation or ordinance of a local government provides some evidence of negligence to consider along with all of the other evidence bearing on the issue. *Long* v. *Forest-Fehlhaber,* 55 N.Y.2d 154, 160, 448 N.Y.S.2d 132 (1982).  Along with this negligence, there must be a finding of proximate cause.  The connection between the failure to contact the County or attempt to procure the permit and the happening of the crash on the train tracks must be "logical and immediate enough" to permit a finding that this negligence was a substantial proximate cause of the event (*i.e.*, the crash)  which produced the injury. *Ferrer* v. *Harris,* 55 N.Y.2d 285, 293-94, 449 N.Y.S.2d 162, *order*

*amended,* 56 N.Y.2d 737, 451 N.Y.S.2d 740 (1982) (*citing,* Restatement, Torts 2d, §431).  The Court finds that it was. *See, e.g., Ferrer, supra.*

It is undisputed that had CAT or Nova contacted the County, the permit would have been denied and they would have been told to propose an alternate route[17].  The reason for the purported denial was clear, the load "would have been likely to get caught up on the [railroad] tracks"[18], which is exactly what happened. It is therefore 'logical and immediate enough' to find that the load would never have become stuck on the tracks or been hit by the train because it would never have been on Colby Road were it not for the negligent act of failing to contact the County about the permit.

The subsequent alleged negligent acts of the other parties would not operate as superceding causes, cutting off liability for this act, because they did not produce a different result than could have reasonably been anticipated. *See, In re September 11 Litigation,* 280 F.Supp.2d 279, 301 (S.D.N.Y. 2003) (Under New York law, when an intervening cause interrupts the natural sequence of events, turns aside their course, prevents the natural and probable result of the original act or omission, and produces a different result that could not have been reasonably anticipated, it will prevent a recovery on account of the act or omission of the original wrongdoer.

---

[17] Hens Deposition, pp. 42 - 43, 53 -54.

[18] *Id.* at p. 42.

(Internal citations omitted.)).   When "***  the intervening act is a natural and foreseeable consequence of a circumstance created by defendant, liability will subsist." *Kush* v. *City of Buffalo,* 59 N.Y.2d 26, 33, 449 N.E.2d 725 (1983) (*citing Derdiarian* v. *Felix Contr. Co.,* 51 N.Y.2d 308, 315, 434 N.Y.S.2d 166 (1980), *Parvi* v. *City of Kingston,* 41 N.Y.2d 553, 394 N.Y.S.2d 161 (1977), and *Prosser, Torts [4th ed.],* § 44, pp. 272-280).

These findings warrant an award of partial summary judgment for Conrail with respect to its cross-claims against CAT for contribution and damages. Summary judgment against Nova is not warranted for a number of reasons.  First, Nova's responsibility for inquiry or obtaining of the local permit is disputed.  Proof has been submitted by Nova that CAT did not specifically request that they obtain local/county permits and that it was not their practice to obtain local permits unless so specifically requested (Dkt. #150-9, pp. 77-81, 119, 121).  There is also proof that CAT understood that Nova would provide *all the required permits* for travel of the load from point of origin to destination (Dkt. #150-14, pp. 28, 29).  This disputed fact is material to Nova's liability in this regard and as such cannot be resolved on summary judgment.  Second, this theory of liability rests solely on the contractual relationship between CAT and Nova and this contractual obligation alone will not generally give rise to tort liability in favor of third party Conrail. *Espinal* v. *Melville Snow Contractors, Inc.*, 98 N.Y.2d 136, 746 N.Y.S.2d 120 (2002).  The exceptions to this general rule need not be addressed in light of the award of summary judgment

against CAT.  However, should a jury find that Nova was obligated to obtain the local permit, it shall be held liable at least to CAT for its failure to do so.  Further, because the Court has held that the failure to inquire into the local permit cannot be found as a matter of law to be the sole proximate cause of the accident, this summary judgment against CAT is awarded only on the issue of liability and not the proportions thereof.

With respect to summary judgment in favor of Conrail on its claims for contribution and damages against DesMeules, although DesMeules owed a duty to plaintiff and Conrail similar to the one held by CAT, the negligence of DesMeules is credibly disputed and summary judgment against him will be therefore denied.

With respect to summary judgment in favor of Conrail on its claims for contribution and damages against D&T, to the extent that it is based on the failure to procure the local/county permit, it must be denied.  Regardless of whether D&T owed a duty to Conrail in this regard, there is a total lack of evidence suggesting that D&T was, in any way, responsible for obtaining this permit.  To the extent that it is based on the negligence of D&T's escort drivers, the Court finds that this conduct qualifies as an exception to the general rule that contractual obligations alone will not give rise to tort liability in favor of third parties, expanding D&T's duty of care to Conrail inasmuch as D&T, while engaged affirmatively in discharging its contractual obligations, created an unreasonable risk of harm to others such as Conrail and the plaintiff.  *Church ex rel. Smith* v. *Callanan Indus., Inc.,* 99 N.Y.2d 104,

111, 752 N.Y.S.2d 254, 257 (2002) *(citing, Espinal, supra,* 98 N.Y.2d at 139-142 ("a defendant who undertakes to render services and then negligently creates or exacerbates a dangerous condition may be liable for any resulting injury") and *H.R. Moch Co.* v. *Rensselaer Water Co.,* 247 N.Y. 160, 167, 159 N.E. 896 (1928)(conduct which subjects the promisor to tort liability is described as "launch[ing] a force or instrument of harm")).   D&T can, therefore, be held liable to Conrail for both contribution and property damage.   However, the negligence alleged against the drivers is likewise credibly disputed, creating genuine issues of material fact preventing summary judgment on this issue.

> Conrail's motion seeking summary judgment in its favor on all cross-claims
> filed against it by the other co-defendants

CAT has cross-claimed against Conrail for indemnification, contribution and property damage. DesMeules, D&T and Nova have cross-claimed for indemnification and contribution.  Conrail seeks to dismiss these cross-claims, all of which are based on negligence, arguing that they fail as a matter of law because no genuine issue of material fact establishes Conrail's negligence in the causation of the accident.  In opposition to Conrail's motion, CAT and DesMeules, Nova and D&T raise numerous alleged acts of negligence on the part of Conrail which they argue contributed to the accident.

Upon a thorough review of the record, the Court finds that the deposition testimony, expert affidavits and other evidence is sufficient to establish a *prima facie*

showing that Conrail was not negligent in the happening of this accident and may not be held liable for either plaintiff's injuries or CAT's property damage.

CAT and DesMeules, Nova and D&T must now rebut Conrail's motion with more than conclusory allegations and general denials. FRCvP 56(e); *see also Kerzer v. Kingly Mfg.,* 156 F.3d 396, 400 (2d Cir. 1998) ("conclusory allegations, conjecture and speculation ∗∗∗ are insufficient to create a genuine issue of fact"). In this regard, the other defendants (primarily CAT and, to some extent, Nova) have alleged that Conrail was negligent and that such negligence caused the accident in a number of ways. In support of this CAT submits the Hrycay affidavit which opines that Conrail's failures to install (1) a warning sign with a direct emergency telephone number (as it did subsequent to the accident) and (2) a properly placed whistle board could have caused or contributed to the accident. CAT and Nova also allege that the railroad was a "rough" crossing and CAT asserts that the negligent operation of the train with respect to speed, braking and dispatcher notification contributed to the accident.

The Hrycay affidavit contains *per se* factual and legal conclusions and, without more, is insufficient to defeat summary judgment. No other relevant evidence is submitted regarding the failure to post a warning sign with telephone number or whistle board that would create a credible question of Conrail's negligence in this regard. To the contrary, based on the evidence submitted the Court finds that, even if the failure to post the sign were found to be negligent, such was not material and

did not causally contribute to the accident.  The evidence reveals that the drivers were well aware of the approaching train and were already attempting to remove the load from the tracks.  The escort drivers did not have cell phones and could not have made a call even if a warning sign with telephone information had been posted and DesMeules stated in his deposition that he did not even think or have time to make a telephone call.

Likewise, the evidence regarding the "rough crossing" is insufficient to defeat summary judgment.  To the contrary, the evidence submitted establishes that Conrail was not responsible for the maintenance of the portion of the roadway that could be considered rough.  Further, the Hens deposition testimony indicated that the small portion for which Conrail was responsible (*i.e.,* the portion of the crossing containing the tracks and extending out one foot on either side) was level.

Conrail submitted evidence that the train was traveling at an appropriate speed and that the brakes were applied immediately upon noticing that the object on the tracks was not moving[19].  The evidence submitted in opposition is insufficient to rebut these findings.  CAT's complaint that it is Conrail's fault that they have insufficient evidence is unavailing.  There is simply is no evidence submitted that would tend to suggest that the train's rate of speed was in any way a relevant factor

---

[19] Testimony was also offered that this occurred within seconds of first observing the object.

in this case.[20]   For these reasons, summary judgment is awarded to Conrail dismissing all cross-claims filed against it.

D&T's motion seeking summary judgment dismissing all claims and cross-claims filed against it by the other co-defendants

Conrail and CAT have filed cross-claims against D&T for contribution and property damage.  Nova and DesMeules have filed cross-claims for contribution.

As stated above, to the extent that any of the cross-claims filed against D&T are based on the failure to obtain the local/county permit, they must fail and D&T's motion in this limited area shall be granted.  However, for the same reasons that Conrail's motion for summary judgment on its claims against D&T are denied and to the extent that they are based on the negligence of the escort drivers, the Court has found a duty running from D&T to non-contracting third parties such as the plaintiff and Conrail that would therefore subject D&T to liability in contribution for any injury to plaintiff and to Conrail's property.  The duty to CAT and Nova is imposed by contract for purposes of either contribution or CAT's property damage claim. However, also as stated above, there exists credible questions of material fact which prevent summary judgment in D&T's favor.

---

[20] For example, had the truck and escort drivers, or other eyewitnesses on the scene provided deposition testimony that they observed the train traveling at what they thought was an unreasonable speed, or had expert accident reconstruction testimony been submitted that opined that the train was traveling too fast for the conditions, a question of fact might have been presented.

<u>Nova's motion seeking summary judgment dismissing the cross-claims filed</u>

<u>against it by co-defendants Conrail, DesMeules and D&T</u>

Nova seeks dismissal of all cross-claims filed against it with the exception of CAT's cross-claim for contribution[21].   Nova's potential liability to the other defendants rests on whether Nova owed a duty to the plaintiff or the particular defendant seeking contribution.  As stated, *supra*, Nova's role in the instant case is borne solely from its contractual relationship with CAT.  As a result thereof, it hired D&T to perform a certain portion of that contract.  The duty between these parties is clear.

However, in order to project a duty from Nova to third parties such as DesMeules and Conrail, the Court must find, as it did with D&T, that Nova — while engaged affirmatively in discharging its contractual obligations to CAT —, created an unreasonable risk of harm to others such as Conrail and the plaintiff.  *Church, supra,* 99 N.Y.2d at 111, 752 N.Y.S.2d at 257.  By virtue of the actions of its agent, D&T, the Court finds that it did.  Therefore, Nova can be held liable to DesMeules and Conrail for both contribution and property damage if the actions of the D&T drivers are found to be negligent and a cause of the accident.

---

[21] Nova does not dispute that it owed a duty to CAT and recognizes that there is a question of fact material to whether it breached that duty.  The Court has acknowledged this in its denial of that portion of Conrail's motion for summary judgment relating to Nova, *supra*.

To the extent that the D&T drivers are not found negligent, or not to have contributed to the causation of the accident, Nova's liability may rest only on a finding that they were responsible for, and failed to obtain, the local/county permit, and that duty is owed only to CAT (who has already been found to be liable).  In that event, Nova will be held liable to CAT for contribution and/or indemnification.

Because the Court has already found that the negligence of the D&T drivers and Nova's responsibility for obtaining the local/county permit is disputed, Nova's motion will be denied.  Incidentally, because plaintiff has been discontinued from this action due to settlement, that portion of Nova's motion seeking dismissal of plaintiff's claims is denied as moot.

## CONCLUSION

For the above stated reasons, Conrail's motion to strike CAT's and DesMeules' expert affidavit **(Dkt. #171)** is hereby **DENIED**; D&T's motion to  strike CAT's & DesMeules' expert affidavit or, in the alternative for additional expert discovery **(Dkt. #175)** is hereby **GRANTED subject to the conditions** enumerated hereinabove; Conrail's motion for summary judgment **(Dkt. #197)** is hereby **PARTIALLY GRANTED** insomuch as summary judgment is granted in favor of dismissing all cross-claims against it and in favor of Conrail's cross-claims against CAT only and in all other respects is hereby **DENIED**; D&T's motion for summary judgment **(Dkt. #193)** is hereby **PARTIALLY GRANTED** only insomuch as liability is based on the

failure to obtain the local/county permit and in all other respects is hereby **DENIED**;

Nova's motion for summary judgment **(Dkt. #149)** is hereby **DENIED** in all respects.

Further, the parties are hereby **ORDERED** to appear before the Court on the

28th day of July, 2006 at 3:00 p.m. or as soon thereafter as they may be heard to set

a date for trial.

DATED:        Buffalo, N.Y.

              July 7, 2006



                                        _____
                                        */s/ John T. Elfvin*
                                        JOHN T. ELFVIN
                                        S.U.S.D.J.